IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Demond R. Hull, | ) | Civil Action No.:2:11-02070-JFA-BHH |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |

     The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 18; <u>see also</u> Dkt. No. 19.)

     Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

     The Petitioner brought this habeas action on or about August 8, 2011. (Dkt. No. 1.) On November 23, 2011, the Respondent moved for summary judgment (Dkt. No. 18; <u>see also</u> Dkt. No. 19.) By order filed November 28, 2011, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 20.)  On or about December 22, 2011, Petitioner filed a Response in Opposition to the Motion for Summary Judgment, as well as a Motion to Amend/Correct Petition for Writ of Habeas Corpus. (Dkt. No. 22; Dkt. No. 23.) The Motion to Amend was granted on January 12, 2012. (Dkt. No. 26.)

## PROCEDURAL HISTORY

     The Petitioner is currently confined at McCormick Correctional Institution ("MCI"). In September of 2008, Petitioner was indicted for trafficking in cocaine base and/or crack

cocaine (#08-GS-42-5669), and in January of 2009, he was indicted for possession with intent to distribute ("PWID") cocaine base (#09-GS-42-0445). (App. 84-88.) Petitioner, who was represented by Attorney Scott D. Robinson, pled guilty on June 23, 2009, before the Honorable J. Mark Hayes, II. (Id. at 1-18.) Petitioner pled guilty to PWID on Indictment No. 09-GS-42-445, and pled guilty to the lesser included offense of PWID on Indictment No. 08-GS-42-5669. (Id. at 8.) Mr. Fulmer, Attorney for the State, informed Judge Hayes that pursuant to the plea negotiations, Petitioner would receive a fifteen year sentence, concurrent. (Id. at 15-17.) Judge Hayes sentenced Petitioner to fifteen years on each charge, with the sentences to run concurrently. (Id. at 16-17.)

Petitioner did not file a direct appeal of his conviction or sentence. (See App. at 20.)

On or about December 4, 2009, Petitioner filed an application for post-conviction relief ("PCR"). (Id. at 19-26.) In his PCR, Petitioner argued his counsel was ineffective; he stated, *inter alia*,

A) SCDC has me serving 85% of my sentence with no possibility of parole. My plea was 15 years concurrent, nonviolent and serve 51% of my sentence and able for parole after serving 1/3 of my time.

B) Video tape nor any other evidence was shown to defendant prior to plea, pursuant to Rule 5 and Brady v. Maryland.

C) Se[veral] err[ors] ha[ve] been made on sentence sheets dealing with applicant sentence of time has to be served.

(Id. at 20-22.) On September 10, 2010, Petitioner, through Attorney Shawn M. Campbell, filed an Amended Post Conviction Relief Application. (See id. at 29.) In that amended application, Petitioner raised the following grounds for relief:

**INEFFECTIVE ASSISTANCE OF COUNSEL**

1. Counsel failed to allow Applicant to view videotapes, which affected the ability of the Applicant to make a sound decision as to whether to enter into a plea agreement.

2

**INVOLUNTARY PLEA**

1. Counsel failed to disclose material evidence such as the videotape and other discovery materials.

2. The presiding judge failed to inform Applicant of the true nature and elements of the charge.

(Id. at 30.)

On September 16 and 17 of 2010, an evidentiary hearing was held before the Honorable Roger L. Couch. (App. 37-75.) Petitioner was present and represented by Shawn Campbell, Esquire. In an order filed November 17, 2010, Judge Couch denied the application for post-conviction relief and dismissed the petition. (Id. at 76-83.)

On November 29, 2010, Petitioner filed a Notice of Appeal. (See Dkt. No. 19-2.) Robert M. Pachak, Esquire, of the South Carolina Commission on Indigent Defense, filed a Johnson petition for writ of certiorari on behalf of Petitioner, raising the following issue: "[w]hether plea counsel was ineffective in giving petitioner incorrect advice about parole eligibility." (See Dkt. No. No. 19-3; id. at 3 of 8.)[1] Thereafter, on February 22, 2011, Mr. Pachak filed a Petition to Be Relieved as Counsel. (Dkt. No. 19-3 at 7 of 8.) On or about April 13, 2011, Petitioner also filed a *pro se* brief, wherein he raised the following issues:

I.    Whether Trial Counsel's representation was so ineffective that prejudice is presumed pursuant to U.S. v. Cronic?

II.   Whether guilty plea was involuntary?

(See Dkt. No. 19-4; see id. at 3 of 15.) Petitioner also filed a motion seeking the appointment of "outside counsel." (Dkt. No. 19-5.)

The Supreme Court of South Carolina entered an order denying the petition on May 26, 2011. (See Dkt. No. 19-6.) This order also granted counsel's request to withdraw and

---

[1]See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

denied the Petitioner's motion for appointment of outside counsel. (Id.) The matter was remitted to the lower court on June 13, 2011. (See Dkt. No. 19-7.)

The Petitioner then filed the instant habeas action raising the following ground for review:

> **Ground One**: Ineffective assistance of counsel pur. to Cronic v. US
> **Supporting Facts**: See attached brief of appellate defense and pro se Johnson brief that asserts trial counsel's representation was so deficient as to amount to a per se denial of counsel pursuant to Cronic v. US.

(Dkt. No. 1.) In an attachment to his Petition, Petitioner also contends his guilty plea was involuntary. (See Dkt. No. 1-1 at 2 of 12.)

Respondent filed a Motion for Summary Judgment on November 23, 2011. (See Dkt. No. 18; Dkt. No. 19.) Shortly thereafter, Petitioner filed a Motion to Amend/Correct Petition, as well as a Response in Opposition. (Dkt. No. 22; Dkt. No. 23.) On January 3, 2012, Respondent filed a Reply, indicating that he did not oppose Petitioner's Motion to Amend and addressing this claim. (See Dkt. No. 24.) The undersigned granted Petitioner's Motion to Amend/Correct on January 12, 2012. (See Dkt. No. 26.)[2]

Petitioner thereafter filed a Motion to Compel and a Motion for Discovery of Videotape. (See Dkt. No. 29; Dkt. No. 34.) In both of these motions, Petitioner seeks to have the video recording of the traffic stop made part of the record in the case *sub judice*. (Dkt. No. 29; Dkt. No. 34.) On March 8, 2012, the undersigned entered an Order granting Petitioner's Motion to Compel, such that the DVD is now part of the instant record. (See Dkt. No. 37.) Petitioner subsequently filed a "Brief in Support of Video of Offense." (See Dkt. No. 46.)

---

[2]In his Motion to Amend, Petitioner contends that his plea was involuntary. (See Dkt. No. 23.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 410.

**Exhaustion and Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (i) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 201; SCAR 207; SCAR 208; Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for PCR. S.C. CODE ANN. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. CODE ANN. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. CODE ANN. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting

a writ of habeas corpus in the federal courts.  <u>Patterson v. Leeke</u>, 556 F.2d 1168 (4th Cir. 1977); <u>Richardson v. Turner</u>, 716 F.2d 1059 (4th Cir. 1983).

### B. Procedural Bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

 <u>Reed v. Ross</u>, 468 U.S. 1, 10-11 (1984).

If a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim.  Where a petitioner has failed to

8

comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).

### C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997)(citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991); <u>Teague v. Lane</u>, 489 U.S. 288,297-98 (1989); and <u>George v. Angelone</u>, 100 F.3d 353,363 (4th Cir. 1996)).

### D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, <u>Coleman</u>, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. <u>Murray</u>, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of a particular claim, or show interference by state officials. <u>Id</u>.

Absent a showing of "cause," the court is not required to consider "actual prejudice." <u>Turner v. Jabe</u>, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. <u>Murray</u>,

9

477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

## DISCUSSION

Respondent moved for summary judgment on all of Petitioner's grounds for relief. (See Dkt. No. 18; see also Dkt. No. 19.) The undersigned will address all of Petitioner's grounds in turn.

### A. Ground One: Ineffective Assistance of Counsel

As noted above, Petitioner contends in Ground One that his counsel was ineffective pursuant to United States v. Cronic, 466 U.S. 648 (1984). (See Dkt. No. 1.) He references the briefs filed in the petition for writ of certiorari in support of his contention that "trial counsel['s] representation was so deficient as to amount to a per se denial of counsel pur[suant] to Cronic v. US." (Dkt. No. 1 at 6 of 16.) In a memorandum, Petitioner states,

In [the] case sub judice, it was admitted by trial counsel [that]

(A) He did not obtain a copy of the video to review with his "client" prior to the plea.

(B) [He] failed to file notice to the Court his client had fired him and request to be relieved.

(C) [He] failed to seek dismissal based on lack of evidence.

(D) After having no contact with client from Nov. 08 un[til] June 09 plea counsel stepped in only to "negotiate a plea."

(E) Petitioner in the case sub judice had counsel who effectively did nothing but sit in during the plea, as a warm body. No legal advice was ever mentioned at PCR.

(Dkt. No. 1-1 at 4-5 of 12.) Petitioner states that "[i]t is clear counsel did not even know what the sentencing parameters were for PWID 2nd offense." (Id. at 5.) According to Petitioner, "[o]nce the Court deviated from nonviolent to 85% counsel had a[n] affirmative duty to stop

10

the proceedings and advise his client he could <u>withdraw</u> his plea or at the very least advise

the Court his client['s] sentencing sheet read non-violent which was relied upon by Petitioner

at [the] time of plea." (<u>Id</u>. at 6-7.) Petitioner further contends that his counsel should have

moved to dismiss the charges against him due to "lack of probative evidence to connect

drugs to Petitioner," and that a jury trial "would have likely resulted in acquittal." (<u>Id</u>. at 7.)

As Respondent notes in a footnote in his memorandum, Petitioner's claim was never

presented as a <u>Cronic</u> claim to the PCR court. (<u>See</u> Mem. in Supp. at 22 n.2.)[3] Instead, the

Petitioner presented a <u>Strickland</u> claim to the PCR court but raised the <u>Cronic</u> claim for the

---

[3]Because Petitioner never presented his claim pursuant to <u>Cronic</u> to the PCR court, this claim is now procedurally barred. Moreover, he is not able to show cause or actual prejudice. Petitioner raised his ineffective assistance claim in the PCR court and in appealing from the PCR court's order; he simply failed to present a <u>Cronic</u> claim. Because Petitioner's claim pursuant to <u>Strickland</u> is not procedurally barred, however, the undersigned will address that claim herein.

In any event, to the extent Petitioner asserts his ineffective assistance of counsel claim should be reviewed under <u>Cronic</u> instead of <u>Strickland</u>, the undersigned disagrees. Pursuant to <u>Cronic</u>, there are "rare instances" in which a court "may forego an individual inquiry into whether but for counsel's deficient performance, the result of the proceeding would have been different, and may presume prejudice." <u>Graves v. Padula</u>, 773 F.Supp.2d 611, 619 (D.S.C. 2010); <u>see also Cronic</u>, 466 U.S. at 658. The Supreme Court in <u>Cronic</u> outlined three circumstances when prejudice would be presumed: (a) if a defendant is "denied counsel at a critical stage of his trial"; (b) "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (c) if the "surrounding circumstances ma[k]e it so unlikely that any lawyer could provide effective assistance." <u>Cronic</u>, 466 U.S. at 659-61. Because none of those circumstances described in <u>Cronic</u> existed in the case *sub judice*, the PCR court properly identified the principles announced in <u>Strickland</u> as those governing the analysis of Petitioner's claims. The state court's adjudication therefore did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. <u>See Cronic</u>, 466 U.S. at 648; <u>Bell v. Cone</u>, 535 U.S. 685, 696-97 (2002) ("When we spoke in <u>Cronic</u> of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete."); 28 U.S.C. § 2254(d); <u>see also Glover v. Miro</u>, 262 F.3d 268 (4th Cir. 2001) (finding <u>Cronic</u> not applicable where counsel was appointed two days before trial and had between fifty and sixty other cases); <u>Graves</u>, 773 F.Supp.2d at 620-21 (rejecting the petitioner's argument that <u>Cronic</u>, instead of <u>Strickland</u>, applied where the attorney "made a thorough opening statement, and met with Petitioner, not in the bullpen, but for at least 20 minutes before trial to discuss the charges, possible defenses, and his right to testify," and stating, "in light of the absence of controlling case law finding the pre-trial period as a critical stage and in light of controlling case law holding that late appointment of counsel does not justify a finding of per-se prejudice, it cannot be said that the state court's adjudication" met the standard set forth in § 2254(d)(1)).

11

first time in his PCR appeal. (Id.) The PCR court addressed the claim pursuant to Strickland

v. Washington, 466 U.S. 668 (1984), stating, *inter alia*,

> As to Applicant's allegation that Counsel was ineffective for his failure to allow Applicant to view the videotapes of the traffic stops, this Court finds that the Applicant has failed to meet his burden of proof. Although Applicant's PCR Counsel was able to obtain and present the Court with the videotapes of Applicant's stops on the day following the evidentiary hearing, this Court finds that even if Counsel was deficient in not obtaining the videotapes and reviewing them with Applicant, Applicant suffered no prejudice at all. This Court reviewed the videotapes and the testimony presented and found that the videotapes offered no exculpatory evidence that would have assisted Applicant at trial. In addition, this Court finds that Counsel successfully negotiated a significantly reduced sentence for Applicant on the charges, even after being released by Applicant as his attorney. Therefore, this Court finds that the Applicant has failed to meet his burden of proof as to this claim and it should be denied and dismissed.

(App. 81; Dkt. No. 19-1 at 83 of 91.) In the section of the PCR order entitled "Involuntary

Guilty Plea," the PCR court further addressed the claim of ineffective assistance of counsel:

> A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial. Roscoe v. State, 345 S.C. 16, 546 S.E.2d 417 (2001); Richardson v. State, 310 S.C. 360, 426 S.E.2d 795 (1993).

> This Court finds that the record conclusively refutes this allegation. The Applicant showed no reason why he should be allowed to depart from the truth of the statements he made during his guilty plea hearing. This Court finds the Applicant's testimony at the PCR hearing regarding the voluntariness of his plea lacked credibility, in particular as to Applicant's testimony that he would not have pled guilty had he known the sentence was a serious offense, which required service of eighty-five percent before parole possibility. This Court also finds that even if Counsel was deficient in not reviewing the videotapes with Applicant, there was no prejudice to Applicant, as there was nothing that could have been helpful on the videotapes. This Court also finds Counsel's testimony credible in that he did not promise Applicant anything regarding parole and did not inform Applicant how to answer the questions asked by the Court. Therefore, this Court finds that Applicant's guilty plea was freely and voluntarily entered.

(App. at 81-82; Dkt. No. 19-1 at 83-84 of 91.)

Strickland v. Washington, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Id. at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id.

The two-part test enunciated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hilll v. Lockhart, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

As noted above, in his PCR application, Petitioner argued his counsel was ineffective; he stated, *inter alia*,

> A) SCDC has me serving 85% of my sentence with no possibility of parole. My plea was 15 years concurrent, nonviolent and serve 51% of my sentence and able for parole after serving 1/3 of my time.

13

B) Video tape nor any other evidence was shown to defendant prior to plea, pursuant to Rule 5 and <u>Brady v. Maryland</u>.

C) Se[veral] err[ors] ha[ve] been made on sentence sheets dealing with applicant sentence of time has to be served.

(App. 19-26.) In his Amended PCR application, Petitioner argued his counsel was ineffective for failing "to allow Applicant to view videotapes, which affected the ability of the Applicant to make a sound decision as to whether to enter into a plea agreement." (<u>Id</u>. at 30.) Petitioner also contended in his amended application that his guilty plea was involuntary because (1) counsel "failed to disclose material evidence such as the videotape and other discovery materials," and (2) the judge failed to inform Petitioner "of the true nature and elements of the charge." (<u>Id</u>.)

The PCR court analyzed Petitioner's claims with respect to the videotapes and concluded that even if counsel was deficient in not obtaining the tapes and reviewing them with Petitioner, Petitioner suffered no prejudice, as the "videotapes offered no exculpatory evidence that would have assisted Applicant at trial." (<u>Id</u>. at 81.)

To the extent that Petitioner claims in the instant § 2254 petition that his counsel was ineffective for failing to review the videotape with Petitioner prior to Petitioner's guilty plea, Petitioner has not met the standard set forth in § 2254. The undersigned has watched the DVD of the traffic stop and found nothing exculpatory therein. At Petitioner's guilty plea, the following colloquy occurred:

Q. All right, sir, if you would this (indicating) gentleman standing over here . . . is a solicitor. He is going to give us the facts that are behind these cases. . . .

MR. FULMER: Thank you, Your Honor. With regard to Indictment No. 2008-5669, that event occurred on May 14th of 2008. On the date officers working with the sheriff's office were observing the defendant, they knew him to be a –someone in the drug trade. They saw the defendant leave a residence . . . off of Cannons Campground Road in Spartanburg County with a brown paper bag, got into a truck, a Suburban vehicle. They attempted to make a traffic

stop on the defendant. As the officer approached the defendant's vehicle he took off down a short street which led to his house. The officers followed him to his house, he pulled into his driveway. When they searched his car at that time the brown paper bag they had seen him put in the car just moments earlier was not there. They walked back down the street that he had gone down and found that brown paper bag lying in the roadway contained cocaine, marijuana or crack cocaine in the amount of 11.25 grams. . . .

. . .

Q. Sir, were you able to hear the solicitor when he told me the facts behind these cases?

A. Yes, sir.

Q. Now do you believe that as he stated these facts that he is substantially correct?

A. Yes, sir.

(App. 11-13.)

Petitioner stated in his Response that the video "does <u>not</u> show any probative evidence to <u>connect</u> Petitioner to the brown bag found on [the] side of the road." (Dkt. No. 22 at 3 of 14.) While the video does not show Petitioner throwing a brown bag from the Suburban, neither does it show that Petitioner could not have thrown a brown bag from the vehicle. At the inception of the video, the Suburban is already moving. Moreover, the solicitor did not state at the plea hearing that officers had seen Petitioner throw a brown bag from the vehicle. Instead, the solicitor indicated that officers saw Petitioner get into a vehicle with a brown bag, but when the vehicle was searched, no brown bag was found inside, though a brown bag was found along the route driven by Petitioner. Petitioner agreed to these facts as stated by the solicitor. On these facts, the PCR court's conclusion that Petitioner failed to show prejudice is not contrary to clearly established federal law, nor is it an unreasonable determination of the facts.

To the extent Petitioner claims his counsel was ineffective because he gave Petitioner incorrect advice as to parole eligibility, Petitioner has not shown this claim meets the standard set forth in § 2254. Petitioner argued in his application for PCR that he was serving 85% of his sentence with no possibility of parole, when his "plea was 15 years concurrent, nonviolent and serve 51% of my sentence and able for parole after serving 1/3 of my time." (App. at 20-22.) The PCR court addressed this argument in assessing Petitioner's claim of an involuntary guilty plea; the PCR court stated,

> A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial. . . .
> This Court finds that the record conclusively refutes this allegation. The Applicant showed no reason why he should be allowed to depart from the truth of the statements he made during his guilty plea hearing. This Court finds the Applicant's testimony at the PCR hearing regarding the voluntariness of his plea lacked credibility, in particular as to Applicant's testimony that he would not have pled guilty had he known the sentence was a serious offense, which required service of eighty-five percent before parole possibility. . . . This Court also finds Counsel's testimony credible in that he did not promise Applicant anything regarding parole and did not inform Applicant how to answer the questions asked by the Court. Therefore, this Court finds that Applicant's guilty plea was freely and voluntarily entered.

(App. at 82.)

Petitioner is not entitled to relief on this claim. The PCR court found that Petitioner lacked credibility in his testimony that he would not have pled guilty had he known the sentence was a serious offense that required service of eighty-five percent before parole eligibility, and the PCR court found trial counsel credible in his testimony that he did not promise Petitioner anything regarding parole. These factual findings on credibility are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847,

858 (4th Cir. 2003). Petitioner has failed to rebut this presumption. Moreover, the following colloquy occurred at the guilty plea hearing:

> Q. And, sir, you understand that both of these charges are classified as serious offenses under the law. You understand that?
>
> A. Yes, sir.
>
> Q. And you have been able to talk to your lawyer as to the consequences and ramifications of these offenses being classified as serious under the law?
>
> A. Yes, sir.

(App. at 13-14.) After Petitioner's counsel asked the court to consider the negotiated sentence of fifteen years, the following occurred:

> Q. Sir, were you able to hear the statements made by you[r] lawyer?
>
> A. Yes, sir.
>
> Q. Do you agree with those statements?
>
> A. Yes, sir.
>
> Q. Sir, is there anything you want me to know or want me to consider?
>
> A. No, sir.
>
> THE COURT: With it will being a thirty-year sentence, it's eighty-five (85) percent?
>
> MR. FULMER: It is eighty-five (85) percent. Those were meant to run concurrent, Your Honor.
>
> MR. ROBINSON: Concurrent, correct.

(Id. at 15-16.) In light of the PCR court's credibility determination, and the transcript of the guilty plea, Petitioner is not entitled to relief on this claim pursuant to § 2254, as he has not shown the PCR court's determination was contrary to clearly established federal law or an unreasonable determination of the facts. See Cudd v. Ozmint, No. 0:08-2421-RBH-PJG, 2009 WL 3157318, at *10 (D.S.C. Aug. 11, 2009); see also Keener v. Bazzle, 481

17

F.Supp.2d 521, 530 n.6 (D.S.C. 2007) (rejecting a petitioner's claim of ineffective assistance of counsel due to erroneous advice on parole eligibility because, *inter alia*, the petitioner could not satisfy the "prejudice" prong of <u>Strickland</u>). The undersigned therefore recommends granting summary judgment to Respondent on this claim.[4]

## B. Ground Two: Involuntary Guilty Plea

Petitioner also seeks habeas relief on the grounds that his guilty plea was involuntary. (<u>See</u> Dkt. No. 23.) Petitioner states that the "involuntary plea issue is directly related to the ineffective assistance of counsel issue as the plea was a direct result of the ineffective assistance of counsel." (<u>Id</u>. at 1.)

The PCR court addressed this claim as follows:

> The Applicant also alleges that his guilty plea was entered into involuntarily and unknowingly. To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing.
> Further, because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents valid reasons why he should be allowed to depart from the truth of his statements.

---

[4]In his Memorandum in Support of his § 2254 petition, Petitioner also asserts that his plea counsel was ineffective for (1) failing to notify the Court that he had been fired and failing to request to be relieved; (2) failing to seek dismissal based on lack of evidence; (3) stepping in only to negotiate a plea after having no contact with Petitioner from November of 2008 until June of 2009; and (4) doing "nothing but sit in during the plea[] as a warm body." (Dkt. No. 1-1 at 4-5 of 12.) Despite being represented by counsel at his PCR hearing, Petitioner did not raise any of these four claims in his petition for post-conviction relief. These claims are therefore procedurally defaulted from habeas corpus review. <u>See</u> <u>Montgomery v. Bodison</u>, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion; <u>Miller v. Padula</u>, C.A. No. 2:07-3149-PMD, 2008 WL 1826495, at *10 (D.S.C. Apr. 23, 2008) (concluding the petitioner's claim that counsel was ineffective for failing to challenge the lack of timely action on the arrest warrant was not properly exhausted because the claim was not raised during the PCR hearing, and "[a]n issue not ruled upon by the PCR judge is not preserved for review on appeal," and the petitioner's "attempt to raise the new issue in his post-trial motion was insufficient to preserve the issue for appeal").

A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial.

This Court finds that the record conclusively refutes this allegation. The Applicant showed no reason why he should be allowed to depart from the truth of the statements he made during his guilty plea hearing. This Court finds the Applicant's testimony at the PCR hearing regarding the voluntariness of his plea lacked credibility, in particular as to Applicant's testimony that he would not have pled guilty had he known the sentence was a serious offense, which required service of eighty-five percent before parole possibility. This Court also finds that even if Counsel was deficient in not reviewing the videotapes with Applicant, there was no prejudice to Applicant, as there was nothing that could have been helpful on the videotapes. This Court also finds Counsel's testimony credible in that he did not promise Applicant anything regarding parole and did not inform Applicant how to answer the questions asked by the Court. Therefore, this Court finds that Applicant's guilty plea was freely and voluntarily entered.

(Dkt. No. 19-1 at 83-84 of 91 (citations omitted).)

Respondent contends he is entitled to summary judgment on Ground Two because Petitioner has not met the standard set forth in § 2254. (See Dkt. No. 24.) The undersigned agrees and therefore recommends granting summary judgment to Respondent on Ground Two. As the PCR court noted, because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually foreclosed. See Blackledge v. Allison, 431 U.S. 63, 74 (1977). Statements made during a guilty plea should be considered conclusive unless the inmate presents valid reasons as to why he should be allowed to depart from the truth of his statements. See Edmonds v. Lewis, 546 F.2d 566, 568 (4th Cir. 1976). A petitioner may attack the voluntary, knowing, and intelligent character of a guilty plea pursuant to a claim of ineffective assistance of counsel, and the "prejudice" requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. See Strickland, 466 U.S. 668; Hill, 474 U.S. 52.

Petitioner has not shown that the PCR court's determination of this issue was contrary to clearly established federal law or an unreasonable determination of the facts. For all the reasons discussed above, Petitioner has not shown his counsel was constitutionally ineffective. Furthermore, at the plea colloquy, Petitioner indicated that he was satisfied with the work his attorney had done so far. (See Dkt. No. 19-1 at 8 of 91.) The judge asked for Petitioner to stand if he had been "threatened in any way or made any promises" in order to get Petitioner to plead guilty; Petitioner did not stand. (Id. at 8-9.) The judge asked for Petitioner to stand if his decision to "enter the plea has been made freely and voluntarily"; Petitioner stood. (Id. at 9.) In addition, the judge explained that by pleading guilty, Petitioner was giving up his right to a trial by jury and his right to confront and cross-examine the State's witnesses. (Id. at 9-10.) The judge asked if Petitioner understood that the charges were classified as "serious" offenses–Petitioner said yes. (Id. at 15.) Petitioner indicated that he had spoken with his attorney about the "consequences and ramifications of these offenses being classified as serious offenses." (Id. at 15-16.) The record also reveals that the judge asked whether the sentence would be eighty-five percent; the solicitor said yes. (Id. at 17-18.) Because Petitioner has not met the standard set forth in § 2254, Respondent is entitled to summary judgment on Ground Two. See United States v. Solomon, 106 Fed. App'x 170, 171 (4th Cir. 2004); United States v. Robinson, 82 Fed. App'x 322, 323 (4th Cir. 2003) ("Robinson's plea colloquy reveals that his plea was knowingly and voluntarily entered into."); McCoy v. Cartledge, C.A. No. 0:08-3747-HMH-PJG, 2010 WL 680258, at *8 (D.S.C. Feb. 24, 2010) ("As discussed above, McCoy has failed to demonstrate that counsel was constitutionally ineffective. Accordingly, the PCR court held that McCoy's plea was voluntary and intelligently made and McCoy has failed to present any evidence that the PCR court's determination was contrary to clearly established federal law or based on an unreasonable application of the facts.").

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 18) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. The undersigned further RECOMMENDS that a certificate of appealability be DENIED.[5]

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

May 1, 2012
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

---

[5]    Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
    (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
    (B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).